**UNITED STATES**

v.

**Vincent B. MILLER, 587 41 5609, Boiler Technician Fireman (E–3), U.S. Navy.**

**NMCM 89 3600.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 21 July 1989.

Decided 5 April 1990.

LT Thomas Miro, JAGC, USNR, Appellate Defense Counsel.

LT L. Lynn Jowers, JAGC, USNR, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and WILLEVER and JONES, JJ.

WILLEVER, Judge:

■ Voluntary abandonment is not an affirmative defense to attempted criminal conduct where the actor's purposes were frustrated by external forces, such as fear of immediate detection or apprehension. *See United States v. Byrd,* 24 M.J. 286 (C.M.A.1987); *United States v. Walther,* 30 M.J. 829 (NMCMR 1990). Appellate defense counsel assigns the following error:

THE MILITARY JUDGE IMPROPERLY ACCEPTED APPELLANT'S PLEA OF GUILTY TO ADDITIONAL CHARGE I, AS APPELLANT'S STATEMENTS DURING THE PROVIDENCE INQUIRY, "I JUST WALKED PASSED [sic] IT ... AND DIDN'T GO," "I RECOGNIZED SOMEONE AND JUST DIDN'T GO", RECORD AT 19, 20, INDICATE APPELLANT VOLUNTARILY ABANDONED HIS ATTEMPT TO BREAK RESTRICTION. *UNITED STATES V. BYRD,* 24 M.J. 286 (C.M.A. 1987).

This case is an attempt case where the affirmative defense of voluntary abandonment adopted by this Court in our recent *Walther* opinion will *not* lie as a defense to attempted criminal conduct. In *Walther* the accused said in the providence inquiry that he had a change of heart. Abandonment of the intended crime did not result from fear of immediate detection or apprehension. In the case before us, the military judge inquired further and elicited information that indicated appellant feared he might be caught, and that takes this case out of the narrow exception recognized in *Byrd* and *Walther.*

Appellant pled guilty by exceptions and substitutions to, *inter alia,*[1] Additional Charge I and its specification of attempting to break restriction by "requesting to leave the ship while posing as a food service attendant by wearing a food service attend-

---

1. The other offenses were unauthorized absence from USS WISCONSIN (BB–64) from 27 October 1988 to 30 May 1989, terminated by apprehension, and breaking restriction on 14 July 1989.

ant's hat and by carrying two garbage bags." After a thorough providence inquiry, the military judge found appellant guilty, by exceptions and substitutions, of Additional Charge I and its specification of attempting to break restriction by "approaching the quarterdeck to leave the ship while posing as a food service attendant by wearing a food service attendant's hat and by carrying two garbage bags."

## THE ATTEMPT

■ The facts reveal that on 16 July 1989 appellant was restricted to the battleship USS WISCONSIN by the ship's commanding officer. Appellant knew food service attendants were allowed free access to and from the ship for the purpose of taking garbage to the pier. Appellant was not assigned to mess duties, but he posed as a food service attendant by donning a food attendant's hat and carrying two bags of garbage. Instead of actually leaving the ship by the brow he continued to just walk by, about ten feet from the ship's brow because he saw someone who might recognize him at the quarterdeck located between him and the brow. Appellant says he would have indeed broken restriction but for his spotting the person on the quarterdeck who knew him. Appellant's plan was just to walk off the ship, hoping no one would ask for his I.D. card and no one would recognize him. He thought he could finesse the lack of an I.D. card given his ruse as a mess-deck worker, but knew he could not escape recognition once he saw the person on the quarterdeck who knew him and his status. Appellant had discussed the defense of voluntary abandonment with his defense counsel and decided it did not apply.

Were the acts described mere preparation or did they go far enough to constitute an attempt? We are convinced that appellant's close approach to the quarterdeck wearing and carrying the accouterments of and posing as a food service attendant, was the last act prior to actually crossing the quarterdeck and thus breaking restriction. These facts indicate that appellant had gone beyond mere preparation and are strongly corroborative of the firmness of

appellant's intent to break restriction. Only one step remained, actually crossing the quarterdeck, before the offense could be consummated. Indeed, two days earlier he had done just that, but no one recognized him and he did get off the ship.

■ An attempt to commit a crime requires conduct on the part of the individual "which constitutes a substantial step toward commission of the crime." *United States v. Byrd,* 24 M.J. 286, 290 (C.M.A. 1987) (quoting *United States v. Jackson,* 560 F.2d 112, 116 (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977)). *See also United States v. Presto,* 24 M.J. 350 (C.M.A.1987) (act must amount to more than mere preparation to constitute attempt). Conduct is considered substantial if it is "strongly corroborative of the firmness of the defendant's criminal intent." *Id.* Appellant agreed at trial that his acts of wearing a food service attendant's hat, carrying two garbage bags, *and* closely approaching the quarterdeck for the purpose of leaving the ship, amounted to an attempt to break his restriction. We are convinced that these were overt acts, proximate in time and place to the intended crime, taken with specific intent to commit the crime, beyond mere preparation, and were a direct movement toward the commission of the offense.

> [T]he overt act need not be the last act essential to the consummation of the offense. For example, an accused could commit an overt act, and then voluntarily decide not to go through with the intended offense. An attempt would nevertheless have been committed, for the combination of a specific intent to commit an offense, plus the commission of an overt act directly tending to accomplish it, constitutes the offense of attempt. Failure to complete the offense, whatever the cause, is not a defense.

Part IV, para. 4c(2), Manual for Courts–Martial, United States, 1984.

## VOLUNTARY ABANDONMENT OF THE ATTEMPT?

■ Appellant did not abort his plan to break restriction until after he had ap-

proached the quarterdeck with the intent of leaving. He stated he would have gone on with his plan to "just walk past them," but he recognized a watchstander as someone who knew appellant was on restriction and not allowed to leave the ship. Although the affirmative defense of voluntary abandonment is recognized in the military, abandoning a course of action is not voluntary when it is motivated "by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose." *Byrd*, 24 M.J. at 291 (quoting ALI Model Penal Code, § 5.01(4) (1962), reprinted in ALI *Model Penal Code and Commentaries* 296–97 (1985)).

The military judge recognized appellant's initial providence statements suggested appellate had voluntarily abandoned his criminal intent. However, unlike the fact situation in *Byrd* and *Walther*, the military judge in the case before us made further inquiries of appellant and established that appellant was still possessed of criminal purpose as he approached the quarterdeck. Appellant in effect agreed that his approaching the quarterdeck in these circumstances was strongly corroborative of the firmness of his intent to break restriction and that he abandoned his purpose only upon recognizing the watchstander, a circumstance that increased the probability of his detection and apprehension. Therefore, we conclude that the defense of voluntary abandonment does not lie under these facts.

We have examined the record of trial including matters submitted by trial defense counsel under Rule for Courts–Martial 1106(f)(4), the assignment of error, and the Government's reply thereto, and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Senior Judge ALBERTSON and Judge JONES concur.